**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re | : | Chapter 11 |
| | : | |
| Axion International, Inc., *et al.,*[1] | : | Case No. 15-12415 (CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| ------------------------------------------------------------ x | | **Re: Docket No. 10** |

**OBJECTION OF THE COMMUNITY BANK TO MOTION OF DEBTORS
FOR (I) AUTHORIZATION TO (A) OBTAIN SECURED DIP FACILITY
PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364(C) AND (D), (B) GRANT
SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND ADEQUATE
PROTECTION AND (C) AND USE CASH COLLATERAL; AND (II) SCHEDULE
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

The Community Bank ("Community Bank"), by and through undersigned counsel, hereby respectfully submits this objection to the Debtors' DIP Financing Motion.[2]  For the reasons stated below, Community Bank respectfully requests that this Court deny approval of the DIP Financing Motion.

**Background**

1.      In 2013, the Debtors entered into two term loans with Community Bank in the aggregate principal amounts of $1,000,000 and $3,500,000 (the "Community Bank Debt"). The Community Bank Debt bears interest at 4.25% per annum, is secured by ***first-priority*** liens

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Axion International, Inc. [1880], Axion International Holdings, Inc. [6389], Axion Recycled Plastics Incorporated [5048]. The address of the Debtors' corporate headquarters is 4005 All American Way, Zanesville, OH 43701.

[2] Motion of Debtors for (I) Authorization to (A) Obtain Secured DIP Facility Pursuant to 11 U.S.C. §§ 361, 362, and 364(c) and (d), (B) Grant Security Interests, Superpriority Claims and Adequate Protection and (C) Use Cash Collateral; and (II) Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001(c) [Docket No. 10] (the "DIP Financing Motion").

encumbering certain identifiable assets and equipment owned by the Debtors (the "Community Bank Collateral"), and matures on November 15, 2018.  As of December 18, 2015, the balance on the loans was $4,439,314.92.  In addition to principal and interest, the Community Bank Debt provides for the reimbursement and payment of attorneys' fees on or after an Event of Default (as that term is defined in the Community Bank Debt).

2.      The Debtors allege that over the course of the last several years, investor Allen Kronstadt loaned substantial sums of money to the Debtors (for operational and other needs), sometimes on an unsecured basis and others on a secured basis.  As of the Petition Date, the total principal sum purportedly owed to Mr. Kronstadt pursuant to secured promissory notes is approximately $5.2 million (the notes are referred to as the "Kronstadt Secured Notes").  The Kronstadt Secured Notes are purportedly secured by a ***second-priority*** perfected security interest in the Community Bank Collateral.

3.      It appears from the Debtors' Bid Procedures Motion[3] (as well as the first-day declaration) that Krondstadt, as stalking horse bidder, intends to essentially convert his loans to equity and buy the Ohio State Collateral (as that term is defined in the Bid Procedures Motion) and Community Bank Collateral for $500,000 – significantly less than the amount owed to Community Bank and significantly less than the value of the relevant property.

#### Objection

4.      Community Bank opposes the DIP Financing Motion to the extent it purports to prime or otherwise grant the DIP Lender any interest superior to Community Bank's claim and

---

[3] Debtors' Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving Certain Notice Procedures, (C) Approving the Assumption and Assignment Procedures, and (D) Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Contracts and Leases [Docket No. 11] (the "Bid Procedures Motion").

lien in the Community Bank Collateral, without Community Bank's consent.  Community Bank

further opposes the DIP Financing Motion because it fails to provide adequate protection to

Community Bank for priming or in exchange for the Debtors' ongoing use of Community

Bank's collateral during these chapter 11 cases.[4]  Further, Community Bank objects to the extent

the DIP Financing Motion grants the DIP Lender first priority rights to "cash collateral" but then

broadly defines "cash collateral" without limitation as all "cash collateral" defined under 363 of

the Bankruptcy, which could be construed to mean first priority rights in proceeds of the

Community Bank Collateral.  (DIP Financing Motion at p. 6.)  Finally, Community Bank

opposes any limitation, at this juncture, to the applicability of the equitable doctrine of

marshaling.

## Basis for Objection

5.      Community Bank is a first priority secured creditor with a lien on significant

equipment and other assets of the Debtors.  The equipment and assets are collateral securing the

Community Bank Debt.  While the DIP Financing Motion appears to recognize the first priority

secured status of Community Bank and its liens in the Community Bank Collateral, the DIP

Financing Motion also states that the DIP Lender shall be granted a perfected first priority lien

(the "DIP Facility Liens," as defined in the DIP Financing Motion) in all "current and future

assets of the Debtors," subject only to Chapter 5 avoidance actions and a "carve out" for

professional fees.  (*See* DIP Financing Motion pp. 18-20.)  This statement conflicts with the

Concise Summary required by Bankr. LR 4001 (DIP Financing Motion at p. 4), and Exhibit B to

the DIP Financing Motion, both of which state that the DIP Facility Liens will attach to the

---

[4] As of the filing of this Objection, the Debtors have not yet filed nor provided a form of final order approving the DIP Financing Motion.  Community Bank reserves all rights to lodge further objections once it has had a chance to review the proposed final order.

Community Bank Collateral, but subordinate to the liens of Community Bank.  In any event, Community Bank objects and does not consent to the priming of its liens.

6.      Further, by the DIP Financing Motion, the Debtors fail to provide adequate protection to Community Bank necessary for priming.  The Debtor has the burden of proof on the issue of adequate protection, 11 U.S.C. § 364(d)(2), and it should be granted only under "extraordinary" circumstances.  *See In the Matter of Qualitech Steel Corp.*, 276 F.3d 245, 248 (7th Cir. 2001) (This policy is recognized by § 364(d) which permits the priming of an existing lien only as "a last resort."); *In re Seth Co.,* 281 B.R. 150, 153 (Bankr. D. Conn. 2002) ("ability to prime is extraordinary"); 3 Collier on Bankruptcy ¶ 364.05 (2013).  The DIP Financing Motion is entirely silent on adequate protection for Community Bank, and Exhibit C to the DIP Financing Motion (the proposed budget) shows no line-item for interest payments to Community Bank.

7.      To provide adequate protection, "the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing."  *Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.),* 16 F.3d 552, 564 (3rd Cir. 1994).  The DIP Financing Motion does not in any way propose to provide Community Bank with adequate protection.  Therefore, the Debtors have not satisfied the requirements of § 364(d) with respect to providing adequate protection for Community Bank.

8.      Additionally, section 363(e) provides that the Court shall prohibit or condition the use of property that is being used, sold, or leased -- or that is proposed to be used, sold, or leased -- by a debtor as necessary to provide adequate protection of such interest.  11 U.S.C. § 363(e).  As discussed above, the Debtors are using the Community Bank Collateral to operate as debtor

in possession, and apparently propose to sell the Community Bank Collateral, but have not provided or proposed to provide Community Bank with any adequate protection during this Chapter 11 case.  The Debtors have failed to even provide evidence that the Community Bank Collateral is otherwise insured and protected.

9.      The Debtors should also not be permitted to deprive Community Bank of its right to marshaling.  Although not mentioned in the DIP Financing Motion, buried on page 26 of the Interim Order, ¶ 34 is a provision that would strip Community Bank of its equitable right to marshaling.  Paragraph 34 provides, "<u>Marshaling</u>. Subject to entry of a Final DIP Order, in no event shall the DIP Lender or Kronstadt be subject to the equitable doctrine of 'marshalling' or any similar doctrine with respect to the Collateral."   Community Bank should be entitled to all of its rights, until such time as the Court makes a determination as to whether marshaling might or might not be appropriate.

10.      Finally, Community Bank notes that the Debtors' Bid Procedures Motion (as well as the first-day declaration) provides that Krondstadt, as stalking horse bidder, intends to essentially use his prepetition loans and the DIP Liens granted by the DIP Financing Motion to buy all the assets of the Debtors, including the Ohio State Collateral and the Community Bank Collateral for $500,000 – significantly less than the amount owed to Community Bank and significantly less than the value of the Community Bank Collateral alone.  The Bid Procedures Motion does not explain how Krondstadt will circumvent the first priority lien position of Community Bank in the Community Bank Collateral, and Community Bank has filed a separate objection to the Bid Procedures Motion.  Nevertheless, Community Bank objects to the DIP Financing Motion to the extent the relief granted thereby furthers a sale process which will attempt to strip Community Bank of its collateral.

## Conclusion

Based on the foregoing, Community Bank respectfully requests that this Court deny the DIP Financing Motion, or alternatively, grant Community Bank the protections it is entitled to as a condition of approving the DIP Financing Motion, and grant such other just and appropriate relief as the Court sees fit.

Dated:  December 22, 2015                     **CROSS & SIMON, LLC**
Wilmington, Delaware

                     By: */s/ Christopher P. Simon*
                          Christopher P. Simon (No. 3697)
                          Kevin S. Mann (No. 4576)
                          1105 N. Market St., Suite 901
                          Wilmington, DE 19801
                          Ph: (302) 777-4200
                          Fax: (302) 777-4224
                          csimon@crosslaw.com
                          kmann@crosslaw.com

                          *Counsel for The Community Bank*